## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON

JUSTIN MARCUM,

      Plaintiff,

v.                                                 **Case No. 2:13-cv-22424**

JIM RUBENSTEIN, Commissioner,
West Virginia Division of Corrections,
DAVID BALLARD, Warden, Mount Olive
Correctional Complex, PAUL PARRY,
Associate Warden of Security,
CHRISTOPHER BLAKE, Principal of Education,
RON SMITH, ABE Teacher, and CAPT. WILLIAMS,

      Defendants.

### PROPOSED FINDINGS AND RECOMMENDATION

On August 30, 2013, the plaintiff, who was then incarcerated at the Mount Olive Correctional Complex ("MOCC"), filed a Complaint (ECF No. 1) and an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 2). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On review, the court must dismiss the case if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court further explained its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * * In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50. Because service of process has not occurred, a motion to dismiss has not been filed in this case. However, the standards set forth in *Twombly* and *Iqbal* are the same standards applied to cases screened under 28 U.S.C. § 1915A.

2

## THE PLAINTIFF'S ALLEGATIONS

The plaintiff's Complaint alleges that, in June of 2011, he was placed in administrative segregation at MOCC and on the Quality of Life ("QOL") Program.[1]  The plaintiff further alleges that such classification interfered with his ability to promptly complete his GED and limited his access to programs and services that would enhance his consideration for parole.

According to the Complaint, the plaintiff enrolled in GED classes in August of 2011 and was sent GED packets through the mail.  (ECF No. 1 at 4, ¶ 15).  The plaintiff alleges that he was having trouble understanding the packets and requested assistance from the prison's Education Department.  (*Id.*, ¶¶ 16-17).  However, he was apparently told that he could not be given a tutor until he reached a certain level on the QOL Program.  (*Id.*, ¶ 18).  The plaintiff's Complaint indicates that, on or about January 1, 2012, he filed a grievance concerning the alleged lack of assistance with his GED program.  (*Id.*, ¶ 20).  Captain James McCloud (who is not a defendant herein) responded stating "Mr. Marcum, we are working with the Education Dept. trying to get you in a class to complete or [sic] GED."  (*Id.*, ¶ 20 and Ex. 3).  The plaintiff did not appeal this grievance to the Warden or the Commissioner.  (*Id.* at 5, ¶ 21).

In approximately June of 2012, the plaintiff asked Captain James Matheney, who had taken over as Segregation Commander, about his requests for assistance with his GED.  Captain Matheney allegedly told the plaintiff that he would have to "deal with it through requests" to the Education Department.  (*Id.*, ¶¶ 23-25).  The plaintiff alleges that, by this time, he had worked his way up to Level Five of the QOL program and was

---

[1]  The Quality of Life program ("QOL program") at MOCC is a behavior-driven progressive incentive system consisting of five levels.  Inmates qualify for advancement to the next level by completing required behavioral and educational programs.

about to see the Parole Board.  (*Id.*, ¶ 26).

The plaintiff further alleges that on or about September 4, 2012, he was denied parole, and that the Parole Board stated, "We see that you haven't completed any of your recommended classes and you've had numerous write-ups."  (*Id.*, ¶ 27).  According to the Complaint, "the Parole Board gave the plaintiff a year set-up and recommended that he stay write-up free, complete all programs, and maintain employment in order to work towards parole."  (*Id.* at 6, ¶ 28).  However, the plaintiff subsequently got a write-up which resulted in his having to start the QOL Program over again.  (*Id.*, ¶ 29).  The plaintiff further alleges that he was thereafter told that he could not receive GED packets until he reached Level Two of the QOL Program.  (*Id.*, ¶¶ 30-31).

The plaintiff further alleges that, after about two months of still not receiving help, he filed another grievance, and was told that "when you've demonstrated appropriate behavior and program compliance, you will be moved through the QOL Program and to General Population where you can continue your IRPP."[2]  (*Id.*, ¶ 32 and Ex. 6).  The plaintiff unsuccessfully appealed this response to the Warden.  (*Id.*, ¶ 33 and Ex. 6).

According to the Complaint, the plaintiff was again denied parole on or about July 1, 2013, and was given a six month set-up and told to remain write-up free.  (*Id.*, at 7, ¶ 34).  The plaintiff states that he subsequently drafted correspondence to defendants Warden David Ballard, Associate Warden of Security Paul Parry and Commissioner Jim Rubenstein, as well as Director of Special Investigations Gary W. Slater, and three Superintendents of Education, asking for help with his education and stating that he was being refused proper rehabilitation.  (*Id.* at ¶ 35 and Ex. 8).

---

[2] "IRPP" is an acronym for "Individual Re-entry Program Plan."

The plaintiff also filed another grievance contending that, under prison policies, inmates in the Control Unit are allowed access to programs and services including education programs.  (*Id.*, ¶ 36).  According to the Complaint, Captain Matheney responded to this grievance stating that "The CM has made arrangements for you to receive educational packets that are available to you within the guidelines of the QOL Program." (*Id.* at 8, ¶ 38 and Ex. 9).  The plaintiff allegedly appealed this response to Warden David Ballard and was allegedly told that "GED classes are not available in the segregation unit" and "your actions are the sole reason you are in the segregation unit." (*Id.*, ¶¶ 39-40).  The plaintiff also alleges that he appealed the grievance to Commissioner Jim Rubenstein.[3]

The plaintiff contends that his classification in administrative segregation constituted deliberate indifference to his right to rehabilitation and education and constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article III, Section 10 of the West Virginia Constitution. The plaintiff seeks declaratory and injunctive relief, as well as monetary damages from each of the defendants.

On August 7, 2014, the Clerk's Office modified the plaintiff's address to reflect that he had been transferred from the custody of the West Virginia Division of Corrections ("WVDOC") at MOCC to the custody of the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA") at the Tygart Valley Regional Jail ("TVRJ").[4]  According

---

[3]  The undersigned notes that Exhibit 9 provided with the plaintiff's Complaint does not contain the Warden or Commissioner's responses to this grievance.

[4]  The undersigned's understanding is that the plaintiff was released on parole on January 16, 2014, and was transferred to the custody of the WVRJCFA as a pre-trial detainee on separate criminal charges filed in the Circuit Court of Taylor County, West Virginia.

to the WVDOC website, the plaintiff is presently incarcerated at the Pruntytown Correctional Center ("PCC"), in the Northern District of West Virginia, after being convicted of unlawful assault in the Circuit Court of Taylor County on or about February 2, 2016. The plaintiff has not notified the Clerk's Office of these changes in his contact information as required by Local Rule 83.5 of the Local Rules of Civil Procedure for the United States District Court for the Southern District of West Virginia.

**ANALYSIS**

**A.      The plaintiff's Eighth Amendment Claim.**

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.*, at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.*, at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which

6

> the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id., at 837.

The Eighth Amendment to the Constitution carries no guarantee that a prisoner will receive rehabilitation opportunities. *See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464 (4th Cir.), *cert. denied sub nom Mickle v. Moore*, 528 U.S. 874 (1999). Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint does not allege any specific conduct by the defendants that would rise to the level of deliberate indifference or cruel and unusual punishment under the Eighth Amendment.

Additionally, although the plaintiff has not specifically alleged such a claim in his Complaint, the Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law." However, as a result of his conviction and imprisonment, a prisoner's protected liberty interests are significantly reduced. As noted by the Supreme Court in *Sandin v. Conner*, "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner" and "the Due Process Clause did not itself create a liberty interest to be free from intrastate prison transfers." 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)). In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit reiterated that, "[i]n order to prevail on either a procedural

7

or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property" by governmental action.  Under the reasoning in *Sandin*, the *Beverati* Court further held that neither the fact that an inmate was placed in administrative segregation, nor the general conditions therein, resulted in confinement that is atypical or posed a significant hardship on the inmate vis-a-vis ordinary prison life, so as to give rise to a liberty interest protected by the Due Process Clause.  *Id.* at 502-504.

Following the reasoning of the Supreme Court in *Sandin*, the undersigned finds no liberty interest implicated by the plaintiff's placement in administrative segregation, and as it is not atypical for inmates to be placed in administrative segregation for any number of reasons.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Beverati v. Smith*, 120 F.3d at 502-04 ("confinement to administrative segregation does not implicate a liberty interest"); s*ee also Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976) (a prisoner has no liberty interest in being housed in any particular prison facility and no right to notice and an opportunity to be heard prior to such reassignment).

In *Beverati*, *supra*, the Fourth Circuit held that Maryland inmates in administrative segregation who claimed to be surrounded by vermin, human filth and water from leaking toilets, denied air conditioning, served cold food in meager portions, denied outdoor recreation, and given <u>no</u> educational or religious services, had failed to meet the *Sandin* standard.

> Accepting Inmates' version of the conditions in administrative segregation, as we must for purposes of review of the grant of summary judgment [to defendants], we conclude that although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life.

> In sum, we conclude that viewing the conditions of confinement in administrative segregation that are alleged by Inmates in the light most favorable to them, the conditions do not implicate a liberty interest. And, because they possessed no liberty interest in avoiding confinement in administrative segregation, the district court properly granted summary judgment in favor of prison officials on Inmates' procedural and substantive due process claims.

500 F.3d at 504.

While the Supreme Court ruled in *Wilkinson v. Austin*, 545 U.S. 209 (2005), that the "totality of circumstances" to which inmates are subjected in the Ohio "super maximum" prison (prohibition of almost all human contact including cell-to-cell conversation, 24 hour a day lighting, one hour exercise in a small indoor room, indefinite placement, and disqualification for parole consideration) could be atypical and significant hardships which creates a liberty interest and its attendant due process requirements, the plaintiff has not alleged that he is subject to such arduous conditions.[5] Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a facially plausible due process claim against the defendants.

The holdings in *Farmer, Sandin*, *Beverati* and *Wilkinson* and establish that the plaintiff has failed to state a facially plausible claim in violation of either the Eighth or Fourteenth Amendments. Accordingly, pursuant to the holdings in *Twombly* and *Iqbal*, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted by this federal court. [6]

---

[5] The plaintiff was not disqualified from parole consideration, and he was subsequently released on parole on or about January 1, 2014. As noted herein, such release rendered the plaintiff's requests for declaratory and injunctive relief moot. The plaintiff has no standing to address such relief on behalf of other inmates as pled in his Complaint.

[6] Furthermore, the undersigned notes that, to the extent that the plaintiff's claims are grounded in his alleged inability to complete programming that would aid in his consideration for parole, such a claim appears to be moot in light of the plaintiff's release on parole on January 16, 2014. Moreover, because the plaintiff is presently incarcerated on new charges in a facility located within the jurisdiction of the United States District Court for the Northern District of West Virginia, any present relief concerning his access to

The plaintiff's Complaint also alleges a violation of his rights under Article III, section 10 of the West Virginia Constitution.  However, in light of the proposed finding that the plaintiff's Complaint fails to state a cognizable federal Constitutional claim upon which relief can be granted, to the extent that any viable state law claim remains, the undersigned proposes that the presiding District Judge decline to retain pendant or supplemental jurisdiction over any alleged state law claim raised in the Complaint.  *See* 28 U.S.C. § 1367(c)(3); *see* also *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-27 (1966); *Sigmon v. Poe*, 564 F.2d 1093, 1096-97 (4th Cir. 1977)   (Where federal constitutional claims are dismissed before trial, state law claims upon which the court has pendant jurisdiction should be dismissed as well).

## B.      The plaintiff's claims for declaratory and injunctive relief.

In his Complaint, the plaintiff requests a declaration that the defendants' conduct violated his rights under the laws and Constitutions of the United States and West Virginia, and injunctive relief ordering the defendants to "start letting inmates take their IRPP classes on the QOL Program."  (ECF No. 1 at 10, ¶¶ 49 and 50).  However, on or about January 1, 2014, the plaintiff was released on parole and was no longer incarcerated in segregation at MOCC.

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy.  U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the

---

education or rehabilitation programs must be sought in that court after exhaustion of the available administrative remedies.

constitutional authority to adjudicate the issue." *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.")  Furthermore, as noted above, the plaintiff cannot attempt to litigate this claim on behalf of other prisoners.  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's requests for declaratory and injunctive relief made in the Complaint (ECF No. 1) must be denied as moot.[7]

Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the plaintiff's Complaint (ECF No. 1) under 28 U.S.C. § 1915A and **DENY** his Application to Proceed Without Prepayment of Fees and Costs (ECF No. 2).

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the

---

[7]  The plaintiff's subsequent incarcerated in WVRJCFA facilities, and his current confinement at the PCC, which is within the jurisdiction of the United States District Court for the Northern District of West Virginia, has no effect on this court's ability to grant such relief.

date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the presiding District Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff at the Pruntytown Correctional Center.

May 26, 2016

Dwane L. Tinsley
United States Magistrate Judge